**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nohl Campbell,                              ) | CIV 13-453-PHX-MHB |
|                                             ) | |
| Plaintiff,         ) | **ORDER** |
|                                             ) | |
| vs.                                         ) | |
|                                             ) | |
| Carolyn W. Colvin, Commissioner of the) Social Security Administration,               ) |  |
|                                             ) | |
| Defendant.          ) | |

Pending before the Court is Plaintiff Nohl Campbell's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

In February 2010, Plaintiff filed an application for disability insurance benefits alleging disability beginning May 1, 2009. (Transcript of Administrative Record ("Tr.") at 26, 180-81.) His application was denied initially and on reconsideration. (Tr. at 117-20, 123-25.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 127.) A hearing was held on July 15, 2011, (Tr. at 41-86), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 23-40). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

    (4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

    (5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2009 – the alleged onset date. (Tr. at 28.) At step two, he found that Plaintiff had the following severe impairments: low back pain and depression/anxiety. (Tr. at 28.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 28-29.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the following exceptions: can lift 50 pounds occasionally and 25 pounds frequently; can occasionally climb ladders, ropes, or scaffolds and frequently climb ramps or stairs; can frequently balance, stoop, crouch, kneel, or crawl; should avoid concentrated exposure to moving machinery and unprotected heights; is limited to simple, routine, repetitive tasks and low stress jobs; is limited to occasional decision making, changes in work setting, interaction with the public and coworkers, and supervision."[1] (Tr. at 30-32.) The ALJ determined that Plaintiff was unable to perform past relevant work, but based on his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 32-34.) Therefore, the ALJ

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

1  concluded that Plaintiff has not been under a disability from May 1, 2009, through the date
2  of his decision. (Tr. at 34.)

### IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider his subjective complaints; (2) failing to properly consider lay witness or third-party statements; and (3) failing to properly weigh medical source opinion evidence. Plaintiff requests that the Court remand for determination of benefits.

**A.    Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

- 4 -

1  treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
2  activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495
3  F.3d 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and
4  observations of treating and examining physicians and other third parties regarding, among
5  other matters, the nature, onset, duration, and frequency of the claimant's symptom;
6  precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
7  ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff stated that, in August 2007, his life "changed in a dramatic manner" after the automobile accident. (Tr. at 338; 52-53.) He said that the accident caused four discs in his neck and back to herniate with annular tears. (Tr. at 307, 338.) In August 2010, Plaintiff reported increased pain and stiffness in his neck since June, but said that he had not sought any treatment for it. (Tr. at 253-54.) In noting changes that had occurred in his daily activities since his last report to the agency, Plaintiff said that "I don't have internet and cable anymore so I get to spend more time staring at the walls and thinking about when I get to die and how it will be better for my family." (Tr. at 255.) He also said, "it seems I am getting more and more dumb." (Tr. at 256.) At the July 2011 administrative hearing, Plaintiff testified that he could not work due to neck and back pain stemming from his August 2007 automobile collision. (Tr. at 52-53.) He also stated that he had experienced "mental problems" for "[p]retty much" his whole life. (Tr. at 61.) He said he had always been "very confrontational" and alleged he had anger problems. (Tr. at 61-64.) He noted that he had been to court ordered anger management courses twice and he thought it was funny that he got the anger management teacher so mad that she quit. (Tr. at 65-66.)

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 5 -

1    Having reviewed the record along with the ALJ's credibility analysis, the Court finds
2  that the ALJ made extensive credibility findings and identified several clear and convincing
3  reasons supported by the record for discounting Plaintiff's statements regarding his pain and
4  limitations.  Although the ALJ recognized that Plaintiff's medically determinable
5  impairments could reasonably be expected to cause the alleged symptoms, he also found that
6  Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
7  symptoms were not fully credible. (Tr. at 30-32.)

8    The ALJ found Plaintiff was not disabled was because "[Plaintiff's] testimony was
9  so exaggerated that he lacked any credibility." (Tr. at 32.) In support of this finding, the
10 ALJ cited to numerous factors that he properly considered in discounting Plaintiff's
11 allegations. "[Q]uestions of credibility and resolutions of conflicts in the testimony are
12 functions solely of the ALJ." Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation
13 and internal quotation marks omitted).  The court defers to the ALJ's credibility
14 determination "where, as here, the evidence reasonably supports the ALJ's decision."
15 Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

16    Significantly, the ALJ noted that Plaintiff alleged his disabling neck and back pain
17 began in August 2007, almost two years before he stopped working. (Tr. at 32); see Gregory
18 v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (upholding finding that the claimant's back
19 problems were not disabling where that impairment had not prevented her from working).
20 Plaintiff also admitted that he had stopped working for reasons unrelated to any neck or back
21 pain – he stopped working because his employer laid him off. (Tr. at 47-48); see Tommasetti
22 v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly discounted claimant's
23 credibility based, in part, on the fact that claimant's reason for stopping work was not his
24 alleged disability). Additionally, the record indicates that Plaintiff sought and received state
25 unemployment benefits and thereby held himself out as being available for work, while his
26 disability application was pending. (Tr. at 47-48.)  "We have previously reasoned that an
27 ALJ may properly discount an applicant's testimony on this ground." Copeland v. Bowen,
28 861 F.2d 536, 542 (9th Cir. 1988) (ALJ reasonably discounted claimant's credibility where

1    the claimant "received unemployment insurance benefits thereafter (apparently considering
2    himself capable of work and holding himself out as available for work)").

3          The ALJ also noted that, notwithstanding his reports that he could barely walk due to
4    extreme neck and back pain, Plaintiff rode his motorcycle to one of the medical evaluations.
5    (Tr. at 32); see Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (upholding adverse
6    credibility determination that relied on inconsistencies between the claimant's complaints in
7    an activity questionnaire, his hearing testimony, and some of his other self-reported
8    activities).

9          Moreover, the ALJ found that physical examiner Brian Briggs, M.D., reported that
10   Plaintiff magnified his symptoms. (Tr. at 32); see McLavey v. Astrue, 325 F. App'x 593,
11   594 (9th Cir. 2009) (unpublished) (upholding adverse credibility determination where treating
12   physicians indicated claimant was malingering or exaggerating her physical symptoms). The
13   ALJ also discounted Plaintiff's credibility based on his unreliable reports – noting that
14   Plaintiff indicated that he was not using any illicit drugs but then tested positive for
15   methamphetamine. (Tr. at 32); see Thomas v. Barnhart, 278 F.3d 948, 959 (9th Cir. 2002)
16   (claimant's inconsistent statements regarding her drug use supported the ALJ's finding that
17   "this lack of candor carries over to her description of physical pain").

18         The ALJ further determined that Plaintiff's claimed symptomology was
19   disproportionate to the relatively benign objective medical evidence. (Tr. at 32); see Rollins
20   v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be
21   rejected on the sole ground that it is not fully corroborated by objective medical evidence,
22   the medical evidence is still a relevant factor in determining the severity of the claimant's
23   pain and its disabling effects."). As the ALJ noted in his decision, Plaintiff's own pain
24   management doctor, Brian Page, D.O., reported an essentially normal physical examination.
25   (Tr. at 32, 335.) Also, Plaintiff's treatment was minimal – he had not had surgery and he
26   required no assistive devices. (Tr. at 32); see Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.
27   1999) (rejecting subjective pain complaints where claimant's allegation that "she experienced
28   pain approaching the highest level imaginable" was inconsistent with both the minimal,

1 conservative treatment that she received and her failure to request any serious medical
2 treatment); Tommasetti, 533 F.3d at 1039 (ALJ may consider a claimant's failure to seek
3 treatment when assessing claimant's credibility).

4 Lastly, the ALJ observed that Plaintiff was able to sit comfortably at the
5 administrative hearing for an hour. (Tr. at 32); see SSR 96-7p, 1996 WL 374186, at *5 ("In
6 instances where the individual attends an administrative hearing conducted by the
7 adjudicator, the adjudicator may also consider his or her own recorded observations of the
8 individual as part of the overall evaluation of the credibility of the individual's statements.").

9 In sum, the ALJ cited extensively to the record, identifying a multiple inconsistencies
10 that undermined the veracity of Plaintiff's allegations.  (Tr. at 30-32.)  While perhaps the
11 individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to
12 discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall analysis, and it
13 was the cumulative effect of all the factors that led to the ALJ's decision.  The Court
14 concludes that the ALJ has supported his decision to discredit Plaintiff's allegations with
15 specific, clear and convincing reasons and, therefore, the Court finds no error.

16 **B.     Lay Witness/Third-Party Statements**

17 Plaintiff contends that the ALJ erred in failing to properly consider the statements of
18 Dr. Verloop and Plaintiff's family members. Plaintiff states that "[i]t is clear from the ALJ's
19 rejection of all third party statements that legal error was committed, which is significant
20 because the rejected evidence supports the doctor opinions and Plaintiff's credibility."

21 In determining whether a claimant is disabled, an ALJ must consider lay witness
22 testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113,
23 1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.
24 2006)).  An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557
25 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so
26 only upon providing specific reasons that are "germane to each witness."  Id. (quoting
27 Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054.  When an ALJ errs in failing "to
28 properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

1 consider the error harmless unless it can confidently conclude that no reasonable ALJ, when
2 fully crediting the testimony, could have reached a different disability determination." Stout,
3 454 F.3d at 1056.

4 Here, the ALJ considered the third-party statements and found that the opinions of Plaintiff's parents and spouse regarding Plaintiff's diagnosis, severity of symptoms, side effects, and ability to work were far less persuasive than the opinions on those same issues provided by medical professionals. The ALJ found the that the third-party statements lacked clinical and diagnostic support and, as such, found the statements inconsistent with the residual functional capacity assessment. The ALJ also gave little weight to Dr. Verloop because the extent of the impairment noted is inconsistent with the longitudinal evidence or record. Accordingly, the Court finds that the ALJ properly considered the third-party statements set forth in the record and appropriately disregarded the statements and testimony by providing specific reasons "germane to each witness."

14 Even if there was a failure to properly discuss the third-party statements, the Court concludes that no reasonable ALJ, even if fully crediting the statements, could have reached a different disability determination. The limitations and symptoms contained in the third-party statements are entirely similar to and consistent with, those which Plaintiff described in his own testimony. As a result, because this Court concludes that the ALJ's decision to discredit Plaintiff's testimony was supported by substantial evidence, and because the third-party statements were consistent with Plaintiff's testimony, it was reasonable for an ALJ to disregard those statements as well.

**C.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that "[t]he ALJ committed reversible error in rejecting Dr. Bozinovich's opinion and the details of Dr. Mansfield's opinion without complying with applicable federal regulations and Ninth Circuit law."

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating

- 9 -

1  physician's medical opinion and other evidence in the claimant's record. In weighing
2  medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three
3  types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
4  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
5  who neither treat nor examine the claimant. See Lester, 81 F.3d at 830. The Ninth Circuit
6  has held that a treating physician's opinion is entitled to "substantial weight." Bray v.
7  Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen,
8  849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight
9  when it is "well-supported by medically accepted clinical and laboratory diagnostic
10 techniques and is not inconsistent with the other substantial evidence in [the claimant's] case
11 record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion
12 "is not well-supported" or "is inconsistent with other substantial evidence in the record," then
13 it should not be given controlling weight. Orn, 495 F.3d at 631.

14      If a treating physician's opinion is not contradicted by the opinion of another
15 physician, then the ALJ may discount the treating physician's opinion only for "clear and
16 convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If
17 a treating physician's opinion is contradicted by another physician's opinion, then the ALJ
18 may reject the treating physician's opinion if there are "specific and legitimate reasons that
19 are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

20      Since the opinion of Daniel Bozinovich, M.D., was contradicted by consultative and
21 reviewing doctors' opinions, as well as, other objective medical evidence, the specific and
22 legitimate standard applies.

23      Historically, the courts have recognized the following as specific, legitimate reasons
24 for disregarding a treating or examining physician's opinion: conflicting medical evidence;
25 the absence of regular medical treatment during the alleged period of disability; the lack of
26 medical support for doctors' reports based substantially on a claimant's subjective complaints
27 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
28 medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten

1  v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885
2  F.2d at 604.

3        In April 2010, Plaintiff rode his motorcycle to the office of Carl Mansfield, Ph.D., for a psychological evaluation in relation to his application for disability benefits. (Tr. at 304-10.) Plaintiff reported a dysfunctional family, and became tearful when describing his past family history. (Tr. at 304-10.) Dr. Mansfield noted that Plaintiff was vague in reporting his legal issues. (Tr. at 304-10.) Plaintiff was arrested four times but not incarcerated. (Tr. at 304-10.) He was on probation until July 2010. (Tr. at 304-10.) He reported he had used "some pot" in the distant past, but did not presently use any illicit drugs. (Tr. at 304-10.) Dr. Mansfield observed that, while Plaintiff reported significant neck, back, and leg pain, he only stood and stretched once, which was late in the "lengthy" 55-minute interview. (Tr. at 304-10.) Dr. Mansfield noted that Plaintiff "exhibited few of the usual pain behaviors today." (Tr. at 304-10.) He further noted Plaintiff had some memory lapses and diminished concentration, but estimated he had average intelligence. (Tr. at 304-10.) Dr. Mansfield opined that Plaintiff would be able to remember simple directions/instructions; would have difficulty concentrating, maintaining a schedule, and completing a normal work week; would have difficulty responding to work setting changes; and would operate better where minimal contact with others was required. (Tr. at 302-03.)

        The following month, Plaintiff saw Dr. Briggs for a physical examination in relation to his disability benefits application. (Tr. at 315-20.) Dr. Briggs observed that, on examination, Plaintiff grimaced and complained of pain but exhibited normal range of motion. (Tr. at 315-20.) Dr. Briggs noted Plaintiff gave a poor effort during grip strength testing. (Tr. at 315-20.) Dr. Briggs stated that, "[i]t was apparent that [Plaintiff] demonstrated symptom magnification throughout the examination," noting that "[t]here were no real objective findings" to support Plaintiff's complaints. (Tr. at 315-20.)

        In May 2011, chiropractor Louis Verloop, D.C., interviewed and examined Plaintiff, and completed a worksheet entitled "Physical Residual Functional Capacity Questionnaire." (Tr. at 342-48.) Dr. Verloop indicated that his "[f]requency and length of contact" with

- 11 -

1   Plaintiff was "50 minutes." (Tr. at 342-48.)  He opined that, during an eight-hour workday,
2   Plaintiff could sit for 10 minutes total and stand/walk for five minutes total; needed to walk
3   around for five minutes every five minutes; and could occasionally lift 20 pounds.  (Tr. at
4   342-48.)  Dr. Verloop further opined that Plaintiff was limited to using his hands for
5   grasping, turning, and twisting objects for only 10 percent of the workday; using his fingers
6   for fine manipulations for only 10 percent of the workday; and never using his arms for
7   reaching.  (Tr. at 342-48.)

8   In June 2011, Dr. Bozinovich completed a worksheet entitled "Physical Residual
9   Functional Capacity Questionnaire."  (Tr. at 350-54.)  Dr. Bozinovich indicated that he first
10  saw Plaintiff on May 24, 2011, and then saw Plaintiff a second time on June 24, 2011, the
11  day he completed the worksheet.  (Tr. at 350-54.)  He opined that, during an eight-hour
12  workday, Plaintiff could sit for less than two hours total and stand/walk for less than two
13  hours total; needed to get up and walk for two minutes every five minutes; would need
14  unscheduled 30-minute breaks every five minutes; and could never lift any amount of weight.
15  (Tr. at 350-52.)  Dr. Bozinovich further opined that Plaintiff could never perform any
16  activities using his hands, fingers, or arms.  (Tr. at 350-54.)

17  In his evaluation of the objective medical evidence, the ALJ first addressed Plaintiff's
18  radiological examinations from May 2010 through January 2011.  (Tr. at 31.)  The ALJ
19  found that the radiological consultation in May 2010 of the lumbosacral and thoracic spine
20  were negative and there was no evidence of acute bone injury to Plaintiff's right hand.  (Tr.
21  at 31, 311-14.)  The ALJ further found that in January 2011, Plaintiff's radiological
22  examinations were largely unremarkable, showing only mild impingement.  (Tr. at 31, 329-
23  30, 349.)

24  The ALJ then discussed Dr. Briggs' assessment noted above, finding his opinion
25  persuasive in light of the medical evidence of record.  In order to give Plaintiff the "fullest
26  benefit of the doubt," however, the ALJ included additional limitations in the residual
27  functional capacity assessment.  (Tr. at 31.)

28

1    Next, the ALJ analyzed Dr. Mansfield's opinion and specifically noted that Plaintiff
2 exhibited few pain behaviors and had undergone no mental health treatment and was taking
3 no medications. (Tr. at 31.) The ALJ stated that depression and anxiety were diagnosed and
4 mental limitations were found by Dr. Mansfield. (Tr. at 31.) Overall, the ALJ found portions
5 of Dr. Mansfield's opinion persuasive in so far it corresponded to the residual functional
6 capacity and was consistent with the totality of the evidence. (Tr. at 31.)

7    The ALJ also found that the opinions of the State agency's reviewing physicians and
8 psychologists were persuasive (Tr at 31); gave "[l]ittle weight" to the opinion of Dr. Verloop
9 "because the extent of the impairment noted is inconsistent with the longitudinal evidence
10 of record; and gave "[l]ittle weight" to Dr. Bozinovich's opinion "because the limitations are
11 not supported by the objective evidence and are not explained or supported by the
12 physician." (Tr. at 32.)

13   The ALJ concluded his discussion of the objective medical evidence stating, in
14 pertinent part:

> The physical consultative examiner found no severe impairments and the claimant's own pain management doctor reported an essentially normal physical examination. Ex. 9F/5. The physical examiner actually reported symptom magnification and it was noted by the psychological consultative examiner that the claimant rode his motorcycle to the exam. ... Although the claimant's doctor and chiropractor provided severely restrictive physical residual functional capacities, they were filled out based on the information the claimant was providing. The claimant has had no surgeries and uses no assistive device to ambulate, but his low back was listed as severe since there were findings on the MRI and restrictions were given in the hypotheticals to account for this. ...
>
> As for the alleged psychological impairments, the consultative examiner gave a very restrictive assessment. This was based on a one-time visit and relied on the claimant's self-report. ... The claimant also has had no psychological treatment until very recently and it was not of the sort you would expect to see from a debilitating mental disorder, i.e., hospitalizations, suicide attempts, etc. The claimant was nevertheless given the benefit of the doubt with respect to this and [fairly] restrictive mental limitations were provided in the residual functional capacity.

(Tr. at 32.)

   The Court finds that the ALJ properly weighed the medical source opinion evidence, and gave specific and legitimate reasons, based on substantial evidence in the record, for

- 13 -

1 discounting Dr. Bozinovich's opinion and portions of Dr. Mansfield's opinion. The ALJ
2 properly discredited the medical opinions due to inconsistencies with Plaintiff's treatment
3 record and the medical evidence as a whole. The ALJ also found that said opinions were
4 brief, lacked supporting clinical findings, and were primarily based on Plaintiff's self-reports.
5 See, e.g., Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing
6 Fair, 885 F.2d at 605 (An ALJ may reject a treating physician's opinion if it is based "to a
7 large extent" on a claimant's self-reports that have been properly discounted as incredible.);
8 Tommasetti, 533 F.3d at 1041 (finding the incongruity between doctor's questionnaire
9 responses and her medical records provides a specific and legitimate reason for rejecting the
10 opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ
11 properly found that [the physician's] extensive conclusions regarding [the claimant's]
12 limitations are not supported by his own treatment notes. Nowhere do his notes indicate
13 reasons why [the physician would limit the claimant to a particular level of exertion].");
14 Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly
15 rejected a physician's testimony because "it was unsupported by rationale or treatment notes,
16 and offered no objective medical findings to support the existence of [the claimant's] alleged
17 conditions"). Therefore, the Court finds no error.

## V. CONCLUSION

19 Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for
20 disability insurance benefits in this case. Consequently, the ALJ's decision is affirmed.
21 \\\
22 \\\
23 \\\
24 \\\
25 \\\
26 \\\

1  Based upon the foregoing discussion,

2  **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social
3  Security be affirmed;

4  **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
5  accordingly. The judgment will serve as the mandate of this Court.

6  DATED this 24th day of March, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge